[Cite as *State v. Shank*, 2013-Ohio-5368.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 12CA0104-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICK J. SHANK | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 12 CR 0395 |

DECISION AND JOURNAL ENTRY

Dated: December 9, 2013

HENSAL, Judge.

{¶1} Patrick Shank appeals a judgment of the Medina County Common Pleas Court that convicted him of sexual battery, unlawful sexual conduct with a minor, and contributing to the unruliness or delinquency of a minor. For the following reasons, this Court affirms.

I.

{¶2} According to R.A., in May 2008, when she was 13 years old, two of Mr. Shank's teenage children invited her to their house. While she was there, Mr. Shank provided her and some other teens with alcoholic beverages. Thereafter, she began visiting and spending the night at the Shanks' house on a regular basis. She sometimes received a ride to the house and other times Mr. Shank picked her up. R.A. testified that there were a number of other teens who would also spend the night at the house after drinking.

{¶3} R.A. testified that she began a sexual relationship with Mr. Shank's oldest son J.S. The next time she received a ride from Mr. Shank, he asked her about the way she had performed

oral sex on his son. R.A. also testified that Mr. Shank plays in a heavy metal band. One night when she was at the house, he asked her to style his hair in the bathroom. When she was finished, Mr. Shank exposed his penis to her and asked her if she would perform oral sex on him. She ran out of the room and told one of his band mates, who laughed and told her that she should have complied. She also told Mr. Shank's second son J.S., who told her that Mr. Shank had just been kidding.

{¶4} R.A. testified that, sometime in the summer of 2008, she was up late watching television at the Shanks' house when Mr. Shank coaxed her off a couch and led her into a room in the house that he was using as a recording studio. As she was sitting on a stool in the room, he started making sexual advances toward her and forced her knees apart. He made her lay on the floor, removed her pants and underwear and had sex with her. When it was over, she went into the bathroom for a while and then returned to the couch. She testified that she could not leave the house because she had received a ride to it and was too young to drive. She did not tell anyone about the incident because she did not want to hurt Mr. Shank's wife and kids, especially the younger J.S., who was her best friend.

{¶5} According to R.A., in February 2009 she was spending the night at the Shanks' house again when Mr. Shank led her into his bedroom, faced her away from him, pushed her against the headboard of the bed, undid her pants, and had sex with her. After that incident, she stopped going to the Shanks' residence for some time, but returned for a party in May 2010. R.A. testified that she got drunk at the party and went into the downstairs bathroom because she felt sick. While she was in the bathroom, Mr. Shank came in, leaned her against the door, and had sex with her. A few months later in August 2010, she was at the house sitting on a chair in the dining room in the early morning when Mr. Shank entered the room and told her that his wife

would not have sex with him. R.A. testified that he faced her into a corner of the room and had sex with her again. She stayed at the house until the younger J.S. woke up, and then called her mom to get her.

{¶6} R.A. testified that she told one of her friends about having sex with Mr. Shank, but when the friend started telling other people, including R.A.'s mom, R.A. denied that anything had happened because she was afraid and did not want to lose the younger J.S. as a friend. In June 2011, however, she was playing beer pong with Mr. Shank, Mark Survance, and S.K. when she saw Mr. Shank pull S.K.'s shirt down and attempt to kiss S.K. The next morning, R.A. was helping Mr. Shank clean up when he tried to pull her pants down and have her perform oral sex on him. R.A. testified that, after seeing Mr. Shank mistreat another girl and herself again, she finally decided to contact police. The Grand Jury indicted Mr. Shank for two counts of sexual battery under Revised Code Section 2907.03(A)(1) arising out of the summer of 2008 and February 2009 incidents, two counts of unlawful sexual conduct with a minor under Section 2907.04(B)(3) arising out of the May and August 2010 incidents, and two counts of contributing to the unruliness or delinquency of a minor under Section 2919.24(A)(1) arising from the June 2011 party.

{¶7} Although five of the six charges involved Mr. Shank's actions against R.A., one of the contributing-to-the-unruliness-or-delinquency-of-a-minor charges involved his actions against S.K. According to S.K., one evening in June 2011, when she was 17, Mr. Survance brought her to the Shank residence. At the house she began drinking and playing beer pong with Mr. Shank, Mr. Survance, and the younger J.S. Later in the evening, they all left to pick up R.A. When they got back to the house, they resumed playing beer pong and doing shots of whiskey. S.K. testified that, at some point her shirt was pulled down, but she could not remember whether

she had done it or Mr. Shank. She also testified that, at some point, Mr. Shank pulled her to him and kissed her on the lips. Later, she and Mr. Shank went into Mr. Shank's bedroom, and Mr. Shank asked her to sit on his bed with him. She did not feel comfortable doing that, so they returned to the living room. She further testified that Mr. Shank asked her to go to a photo shoot as his girlfriend and model for his band. She said that she did not spend the night at the house, but left with Mr. Survance when some of his friends arrived to take him home.

{¶8} Before and at trial, Mr. Shank moved to prohibit the introduction of "other acts" testimony from K.A. and N.A., who alleged that they had also been sexually assaulted by Mr. Shank. According to K.A., she was friends with the older J.S. and regularly spent the night at the Shank residence after partying and drinking alcohol with other teens. She testified that Mr. Shank made sexually-oriented comments about her body and rubbed the front of his pants against her buttocks if he encountered her in the hallway. One night after she turned 18, she was sleeping in a recliner in the living room when she got up to use the upstairs bathroom. When she attempted to return to the living room, she saw Mr. Shank in the hallway, so she reentered the bathroom to avoid him. The bathroom actually had two doors, one to the hallway and one to the master bedroom. K.A. testified that she thought she would try to go through the master bedroom to get around Mr. Shank, but ended up running into him in the bedroom. He put her on the bed, flipped her over, took off her pants and underwear, and had sex with her. After it was over, she returned to the living room.

{¶9} K.A. testified that a few months later a similar situation happened. She was sleeping over at the Shanks' house and got up to use the upstairs bathroom in the middle of the night. She could not completely lock herself in the bathroom because the lock on the door to the master bedroom was broken. While she was in the bathroom, Mr. Shank entered from the master

bedroom. She went into the hallway to get away from him, but he cut her off. She ended up in the bedroom again where he put her on his bed, undressed her, and had sex with her.

{¶10} K.A. testified that the same scene played out again on a third night. Mr. Shank entered the upstairs bathroom while she was using it in the middle of the night. She panicked and ended up in his bedroom again where he put her on the bed, removed her pants and underwear, and had sex with her. After a similar incident happened a fourth time, she began distancing herself from the Shanks and, eventually, found a new group of friends. According to K.A., the incidents occurred over a two-and-a-half year period, but she did not report them to the police until she learned that Mr. Shank had done similar things to R.A. K.A. testified that R.A. was at the Shanks' house about as often as she, that R.A. drank alcohol while at the Shanks' house and that she had heard Mr. Shank make sexually-oriented comments about R.A.'s body.

{¶11} N.A. testified that she attended parties at the Shanks' house when she was 16. She usually attended them with her boyfriend and drank alcohol that Mr. Shank provided. One night, she was sleeping over at the house with her boyfriend when she got up to use the bathroom. She was wearing only a bra and pajama pants or shorts. As she was returning from the bathroom, she passed the room that Mr. Shank was using as a recording studio. Mr. Shank was in the room, saw her, and asked her to come in to look at something on his computer. When she got near Mr. Shank, he pulled at her pajamas, grabbed her bra, and pulled her against him. He rubbed his pelvic area against her and told her that he had a big penis. Next, he put one of his hands down the front of her pants, inserted a finger into her vagina, and commented on its feel. At that point, she pushed him away and told him to stop, reminding him that her boyfriend was in the next room.

{¶12} N.A. testified that, after she got away from Mr. Shank, she returned to the room where she was sleeping and laid down next to her boyfriend. The following morning, as she was taking a shower, Mr. Shank entered the bathroom, opened the shower curtain and tried to grab her buttocks. He also tried to get in the shower with her until she told him to stop.

{¶13} The trial court admitted the other acts evidence with a limiting instruction. A jury found Mr. Shank guilty of both sexual battery counts, the unlawful sexual contact with a minor count related to August 2010, and both counts of contributing to the unruliness or delinquency of a minor. The trial court sentenced him to concurrent 60-month prison terms for sexual battery, 12 months in prison for unlawful sexual contact with a minor, and 6 months in jail for contributing to the unruliness or delinquency of a minor. It ordered the 12-month prison term to run consecutively to the 60-month term and the 6-month jail term to run concurrently, for a total sentence of 72 months. Mr. Shank has appealed his convictions and sentence, assigning four errors, which this Court has reordered, in part, for ease of consideration.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO INTRODUCE OTHER ACT EVIDENCE OF UNCHARGED BAD ACTS OR WRONGS IN VIOLATION OF EVID. R. 404(B) AND O.R.C. § 2945.59.

{¶14} Mr. Shank argues that the trial court should not have allowed the State to present K.A.'s and N.A.'s other acts testimony. He contends that their testimony was not admissible under Revised Code Section 2945.59 and Evidence Rule 404(B).

{¶15} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio

St.3d 521, 2012-Ohio-5695, ¶ 15.   Yet, "Evid.R. 404(B) contains a non-exhaustive list of exceptions under which other acts evidence may be admitted for a purpose other than to show propensity."  *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 41.   The rule provides that "[e]vidence may be admissible to show 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'"  *In re J.C.*, 9th Dist. Nos. 26229 & 26233, 2012-Ohio-3144, ¶ 13, quoting Evid.R. 404(B); *see also* R.C. 2945.59.

{¶16}  The Ohio Supreme Court has held that, when "considering other acts evidence, trial courts should conduct a three-step analysis."  *Williams* at ¶ 19.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).  The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

(Internal citations omitted.)  *Id*. at ¶ 20.  "[D]ecisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court."  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus.  "Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review."  *Id*.

{¶17}  In *Williams*, the Grand Jury indicted Van Williams for sexually abusing 14-year-old J.H., a boy that he was mentoring at his church.  At trial, the State moved to admit evidence that Mr. Williams had a similar relationship with a different teenage boy, A.B., a 16-year-old member of the high school swim team Mr. Williams coached.  The State argued that Mr. Williams's relationship with A.B. paralleled his relationship with J.H., "indicated a course of

conduct constituting a common plan, demonstrated a distinct pattern of sexual conduct constituting a modus operandi, and, by reasonable inference, tended to prove [Mr.] Williams's intent to achieve sexual gratification with teenage males." *Williams* at ¶ 5.

{¶18} Applying the three-part test, the Ohio Supreme Court determined that A.B.'s testimony was relevant because it tended to show Mr. Williams's motive and the plan he executed of targeting, mentoring, grooming, and abusing teenage boys, which could corroborate J.H.'s testimony. *Id*. at ¶ 22. It explained that A.B.'s testimony was also relevant regarding whether Mr. Williams's intent was sexual gratification. As for the second part of the test, the Supreme Court noted that the trial court twice gave a limiting instruction that the evidence was not being offered to prove Mr. Williams's character, and it presumed that the jury followed those instructions. *Id*. at ¶ 23. Regarding the third step, the Supreme Court explained that, in light of the trial court's instructions, A.B.'s testimony was not unduly prejudicial. According to the Supreme Court, the "instruction lessened the prejudicial effect of A.B's testimony, and A.B. corroborated J.H.'s testimony about the sexual abuse, which had been denied by [Mr.] Williams." *Id*. at ¶ 24. The Supreme Court concluded that A.B.'s testimony was admissible "because it helped to prove motive, preparation, and plan on the part of [Mr.] Williams [and] [t]he prejudicial effect did not substantially outweigh the probative value of that evidence." *Id*.

{¶19} As in *Williams*, K.A.'s and N.A.'s testimony was relevant because it tended to show Mr. Shank's motive and that he had a plan of targeting for sexual activity teenage girls who spent the night at his house after drinking alcohol. As the trial court noted, K.A.'s and N.A.'s testimony was "highly probative of whether [Mr. Shank] acted in conformity with a plan or a purpose or an intent to commit these sexual offenses against [R.A.]." Regarding the second prong, the trial court, like in *Williams*, gave a limiting instruction before K.A. testified about

other acts, before N.A. testified, and again when it charged the jury. There is nothing in the record that suggests that the jury did not follow the court's instructions. Finally, in light of the limiting instruction, and in light of *Williams*, we do not find that the trial court abused its discretion when it found that the prejudicial effect of K.A.'s and N.A.'s corroborating testimony did not outweigh its probative value. *See Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695 at ¶ 24.

{¶20} Upon review of the record, we conclude that the trial court did not abuse its discretion in admitting the other acts testimony of K.A. and N.A. Mr. Shank's first assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN DENYING MR. SHANK'S MOTION FOR JUDGMENT OF ACQUITTAL, PURSUANT TO CRIM. R. 29, AS INSUFFICIENT EVIDENCE WAS OFFERED AT TRIAL TO SUPPORT HIS CONVICTIONS.

{¶21} Mr. Shank next argues that his convictions are not supported by sufficient evidence. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶22} Mr. Shank argues that there was no credible evidence that he had sexual conduct with R.A., let alone that he coerced her into it. He argues that R.A.'s testimony was full of inconsistencies and that her conduct was not consistent with the conduct of a victim of sexual abuse. He also argues that the State failed to prove that there was underage consumption of alcohol at his house.

{¶23} Under the sexual abuse statute, "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: [t]he offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution." R.C. 2907.03(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Coercion means to compel by pressure, threat, force or threat of force." *State v. Walker*, 9th Dist. Wayne No. 10CA0011, 2011-Ohio-517, ¶ 6, quoting *In re Jordan*, 9th Dist. Lorain No. 01CA007804, 2001 WL 1044080, *1 (Sept. 12, 2001).

{¶24} R.A. testified that, in the summer of 2008, she was in Mr. Shank's recording studio when Mr. Shank pulled her knees apart, made her get down on the floor, and had sex with her. She also testified that, on February 7, 2009, Mr. Shank took her by the hand into his bedroom, faced her away from him, pushed her against the headboard, undid her pants, and had sex with her. Her testimony, viewed in a light most favorable to the State, was sufficient to

establish coercion and that she and Mr. Shank engaged in sexual conduct. R.C. 2907.01(A). R.A. further testified that Mr. Shank had sex with her in August 2010, when she was 15, which was sufficient to support his conviction for unlawful sexual conduct with a minor under Section 2907.04(A). Regarding alcohol consumption, R.A. and S.K. both testified that Mr. Shank served them alcoholic beverages while they played beer pong with him on June 9, 2011. Their testimony is sufficient to support his convictions for contributing to the unruliness or delinquency of a minor under Section 2919.24(A)(1).

**{¶25}** Mr. Shank's arguments about the credibility of the witnesses go to the weight of the evidence not its adequacy. Upon review of the record, we conclude that there was sufficient evidence to support his convictions. Mr. Shank's third assignment of error is overruled.

ASSIGNMENT OF ERROR II

> MR. SHANK'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, SUCH THAT IF SAID CONVICTIONS ARE NOT OVERTURNED THEY WILL RESULT IN A MANIFEST MISCARRIAGE OF JUSTICE.

**{¶26}** Mr. Shank next argues that his convictions are against the manifest weight of the evidence. If a defendant asserts that his convictions are against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶27}** Mr. Shank argues that the prosecution's witnesses lacked credibility and that his own witnesses established that he has never served alcohol to minors or engaged in inappropriate sexual activities. He notes that R.A. never screamed out during the alleged attacks, did not tell

anyone about them at the time, admitted that she lied about the incidents on multiple occasions and provided inconsistent versions of the alleged incidents to police. He notes that, contrary to R.A.'s testimony that Mr. Shank told his children to take sleeping pills on the nights of the alleged abuse, the Shanks' family doctor denied that he had prescribed such medication to the family, and police did not find any sleeping pills during a search of the house. He also notes that neighbors never reported any loud music or underage drinking at the house. He further notes that R.A. continued to return to his house for sleepovers after the alleged events happened, which is inconsistent with the behavior of a sexual abuse victim.

{¶28} Although R.A. may have initially denied the sexual activity to her parents and friends and was inconsistent about some of the details when describing the events years after they occurred, her testimony about what happened between she and Mr. Shank was similar to the testimony of K.A. and N.A. R.A. and S.K.'s testimony about Mr. Shank serving alcohol to minors was corroborated by a photograph that appears to show Mr. Shank mixing drinks for a group of teens and a photograph that Mr. Survance took of S.K. and Mr. Shank while they were playing beer pong. While Mr. Shank's wife claimed that the family only plays the game with water, Mr. Survance's photograph shows two partially-empty beer bottles on the table, one in front of Mr. Shank and the other in front of S.K.

{¶29} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness. *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, 2004 WL 3017207, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). "This Court will not overturn the

[jury]'s verdict on a manifest weight of the evidence challenge only because [it] chose to believe certain witnesses' testimony over the testimony of others." *State v. Brown*, 9th Dist. Wayne No. 11CA0054, 2013-Ohio-2945, ¶ 42. After reviewing the record, we conclude that the jury did not lose its way when it chose to believe the testimony of R.A. and S.K. over the testimony of Mr. Shank's witnesses who failed to establish that they were at the parties and sleepovers when the alleged attacks occurred. Mr. Shank's second assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN IMPOSING SENTENCE UPON MR. SHANK.

{¶30} Mr. Shank argues that the trial court improperly sentenced him to the maximum term of incarceration for the sexual abuse offenses. He argues that the court failed to make any reference in the record to justify its imposition of the maximum term of incarceration or the factors it considered before ordering his sentence. According to Mr. Shank, his conduct did not constitute the worst form of the offenses and was not more serious than the conduct of others who have committed the offense. He also argues that his past criminal history does not support the imposition of the maximum term.

{¶31} This Court reviews sentences pursuant to the two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912.

> First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id.* at ¶ 26.

{¶32} The Ohio Supreme Court held in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus, that "[t]rial courts have full discretion to impose a prison

sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum * * * sentences."

> Nevertheless, in exercising its discretion, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.

*State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

{¶33} Mr. Shank does not dispute that his sentence is within the statutory range for a felony of the third degree. Regarding sentencing factors, the court specifically noted that it had considered the "principles and the purposes of sentencing" and the "seriousness * * * and * * * recidivism factors," which included the factors listed in Revised Code Section 2929.12. It also wrote that it had considered those factors in its judgment entry. The court discussed Mr. Shank's prior convictions on the record and mentioned its consideration of them in its judgment. Regarding the sexual abuse that R.A. endured, the court found that "[t]he facts of the case * * * couldn't be more terrible if you look at it through the eyes of the victim."

{¶34} The record indicates that the trial court ordered a presentence investigation report prior to Mr. Shank's sentencing, but it was not made a part of the record on appeal. This Court has held that, if a presentence investigation report is prepared, there is a presumption that the trial court used it when imposing sentence. *State v. Watson*, 9th Dist. Medina No. 12CA0082-M, 2013-Ohio-3392, ¶ 7. We have also held that it is the appellant's duty to ensure that the appellate record is complete. *Id*. In light of the fact that we are unable to review the presentence investigation report, we must presume the validity of the sentence that the trial court imposed for the sexual abuse charges. *Id*.

{¶35} Mr. Shank also argues that the court incorrectly made his sentence for unlawful-sexual-conduct-with-a-minor offense consecutive. He contends that the court's findings that consecutive sentences were necessary to protect the public and to punish him, that consecutive sentences were not disproportionate to the seriousness of his conduct, and that the harm in his case was so great that a single term would not adequately reflect the seriousness of his conduct are not supported by the facts of the case. R.C. 2929.14(C)(4). According to Mr. Shank, he does not have an extensive criminal history, he did not commit any of the offenses while on probation or awaiting trial, and there is no evidence in the record that the harm he caused was so unusual or significant to warrant consecutive sentences. Because the record does not contain the presentence investigation report, however, this Court is unable to evaluate the merits of Mr. Shank's argument.

{¶36} Mr. Shank also argues that the trial court improperly applied the recidivism factors set out in Section 2929.12. He asserts that the court incorrectly found that he had a higher risk of recidivism because of his criminal history. According to Mr. Shank, his only convictions were three misdemeanors from 20 years ago, which is too far in the past to suggest that recidivism is more likely. To the contrary, he contends that the fact that he went 20 years without a conviction suggests that he is less likely to offend.

{¶37} Section 2929.12(D) provides that a sentencing court shall consider whether "the offender has a history of criminal convictions." R.C. 2929.12(D)(2). It also provides that, if an offender has a history of criminal convictions, "the offender is likely to commit future crimes." R.C. 2929.12(D). At sentencing and in its judgment entry, the trial court simply noted that Mr. Shank has a history of criminal convictions and that, under Section 2929.12(D), it makes

recidivism more likely. Upon review of the record, we conclude that the trial court properly applied Section 2919.12(D). Mr. Shank's fourth assignment of error is overruled.

III.

{¶38} The trial court did not abuse its discretion when it admitted other acts evidence, Mr. Shank's convictions are supported by sufficient evidence and are not against the weight of the evidence, and the court did not err when it imposed Mr. Shank's sentence. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.


<u>APPEARANCES:</u>

KENNETH C. STAIDUHAR, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.