[Cite as *State v. Alghamdi*, 2018-Ohio-3158.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.    28837 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARWAN A. ALGHAMDI | STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    2017CRB01763 |

DECISION AND JOURNAL ENTRY

Dated: August 8, 2018

HENSAL, Judge.

{¶1}  Marwan Alghamdi appeals his conviction for unlawful restraint in the Stow Municipal Court.  For the following reasons, this Court affirms.

I.

{¶2}  M.A. testified that she had been separated from Mr. Alghamdi for a year when they decided to spend a weekend together in an attempt to reconcile.  According to M.A., she arrived at Mr. Alghamdi's home on Friday evening.  The next morning, Mr. Alghamdi had to go to the store so he moved M.A.'s car into his one-car garage and parked his car behind it when he returned.  The visit went well until Saturday evening when the couple got into an argument, and M.A. decided to leave.  M.A. testified that Mr. Alghamdi would not let her leave, and began assaulting her.  When he finally stopped hitting her and went outside, she gathered her things and put them in her car, but could not find her car keys.  She, therefore, called her brother and asked him to intercede.  A little while later she heard a noise in the garage.  When she checked the

garage, she found her car keys on the seat of her car. Mr. Alghamdi had also left in his car, allowing her to return home.

{¶3} The next day M.A. spoke to police about the incident, resulting in charges against Mr. Alghamdi for domestic violence and unlawful restraint. A jury found him not guilty of domestic violence but guilty of unlawful restraint. The court sentenced him to 60 days in jail, which it suspended. Mr. Alghamdi has appealed his conviction, assigning as error that the municipal court incorrectly denied his motion for acquittal and that his conviction is against the weight of the evidence.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29. IN THE ALTERNATIVE, THE JURY LOST ITS WAY IN FINDING THE APPELLANT GUILTY OF UNLAWFUL RESTRAINT, IN VIOLATION OF R.C. 2905.03.

{¶4} Mr. Alghamdi argues that the State failed to prove that he committed the offense of unlawful restraint. Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5} The jury found Mr. Alghamdi guilty of unlawful restraint under Revised Code Section 2905.03(A). That section provides that "[n]o person, without privilege to do so, shall knowingly restrain another of the other person's liberty." R.C. 2905.03(A). The duration of the restraint does not have to be prolonged. *See State v. Walker*, 9th Dist. Medina No. 2750-M, 1998 Ohio App. LEXIS 4067, *6-7 (Sept. 2, 1998) (construing similar language under R.C. 2905.01). "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶6} M.A. testified that, when she tried to leave after they began arguing, Mr. Alghamdi grabbed her and told her that she had to listen to him. When she tried to move, he slapped her in the face. He then pushed her to the ground and began hitting her and pulling her hair. He also hit her head against the floor several times until it started to bleed. M.A. testified that, when she got up, she gathered her things but Mr. Alghamdi took them from her and hit her again. He twisted her hand behind her and pushed her to the ground again. When Mr. Alghamdi finally went outside, M.A. put her things in her car but could not find her keys. She asked Mr. Alghamdi to give them to her, but he denied having them. Later, however, after her brother called and spoke to Mr. Alghamdi, the keys appeared on the seat of her car. Officer Jason Bailey testified that, when he spoke to Mr. Alghamdi following the incident, Mr. Alghamdi admitted that there was an incident where he would not allow M.A. to leave his home. The State played a video recording of Mr. Alghamdi's statement at trial.

{¶7} Mr. Alghamdi argues that the State did not present sufficient evidence to establish that he knowingly restrained M.A.'s liberty. In particular, Mr. Alghamdi argues that there was

no evidence that he restrained M.A. willfully. He also argues that there was no evidence that he substantially interfered with her liberty. He argues that the mere fact that M.A. could not find her keys does not mean that he restrained her. He argues that he did not commit any acts that prevented her from accessing her car keys and that he was the one who eventually placed them in her car. He also moved his car out from behind hers so that she could leave once her keys were found. Mr. Alghamdi also argues that he did not prevent M.A. from using her cell phone, so she could have called for a ride or even walked home when she could not find her keys. He also argues that, since the jury acquitted him of domestic violence, it was not convinced of the truthfulness of M.A.'s testimony about his alleged physical restraint of her. He further argues that, even if he did restrain M.A., it was justified because M.A. was an inexperienced driver and was too "emotionally volatile" during the incident to drive safely.

{¶8} Regarding whether Mr. Alghamdi acted willfully, we note that the mens rea for a violation of Section 2905.03(A) is knowingly. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Recognizing that establishing someone's mental state "is often difficult to prove directly," the Ohio Supreme Court has held that it can "be inferred from the surrounding circumstances." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).

{¶9} Viewing the evidence in a light most favorable to the prosecution, we conclude that it was sufficient to convict Mr. Alghamdi of unlawful restraint. M.A. testified that Mr. Alghamdi grabbed her and pushed her to the floor two different times. She testified that he had taken her keys earlier in the day in order to move her car into his garage and refused to give them

back when she asked for them. The jury could reasonably infer that Mr. Alghamdi acted knowingly, especially in light of his admission to Officer Bailey. The jury could also reasonably reject Mr. Alghamdi's assertion that M.A. was unfit to drive. Furthermore, the fact that Mr. Alghamdi eventually allowed M.A. to leave does not negate his prior alleged physical and constructive restraint of her. *See* R.C. 2905.01(A)(1) (contemplating that a person's liberty may be restrained by force, threat, or deception); *Walker*, 1998 Ohio App. LEXIS 4067 at *7. Upon review of the record, we conclude that Mr. Alghamdi's conviction for unlawful restraint is supported by sufficient evidence.

{¶10} Mr. Alghamdi next argues that the jury lost its way when it convicted him of unlawful restraint. If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶11} Mr. Alghamdi's manifest weight argument includes all of the arguments he made regarding the sufficiency of the evidence. In addition, he argues that he did not park behind M.A. to block her in, but only because he had gone on an errand earlier in the day. He notes that he testified that he did not take M.A.'s keys and that they were on a hanger near the door, which

was his and M.A.'s practice. He also testified that he did not provoke M.A. According to Mr. Alghamdi, they were sitting and talking when M.A. started crying, which turned into her screaming at him. As it continued, he decided to go outside until she calmed down. He testified that he never struck or threatened to strike M.A. and had no idea why she had scratches on her face the following day. Regarding whether it was safe for M.A. to drive, Mr. Alghamdi points to his testimony that, when he returned inside after trying to let M.A. calm down, it looked like his house had been ransacked with things thrown everywhere. According to Mr. Alghamdi, the condition of his house supports his argument that M.A. needed to be restrained to prevent injury to her.

{¶12} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Although M.A. and Mr. Alghamdi presented different versions of what happened at Mr. Alghamdi's home, M.A.'s testimony was partially corroborated by Mr. Alghamdi's statement to Officer Bailey that he could remember an incident a couple of days earlier where he did not allow M.A. to leave. Upon review of the record, this Court cannot say that the jury lost its way when it chose to believe M.A.'s version of the facts over Mr. Alghamdi's. Mr. Alghamdi's assignment of error is overruled.

## III.

{¶13} Mr. Alghamdi's assignment of error is overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶14} I respectfully dissent as I believe that Alghamdi's conviction is against the weight of the evidence.

**{¶15}** As noted by the majority, the jury acquitted Alghamdi of the domestic violence charge. In support of M.A.'s version of what transpired at the house, the majority places significant weight on Alghamdi's alleged admission to Officer Bailey. A review of the video reveals that Alghamdi struggled to understand Officer Bailey's questions. Alghamdi was born in Saudi Arabia and English is his second language. When Officer Bailey asked Alghamdi if he understood the charge against him, Alghamdi appeared somewhat confused as he clearly did not comprehend the term "restraint." Officer Bailey attempted to explain the term and asked questions that included references to the alleged incident. While Alghamdi gave multiple affirmative responses, often by nodding his head, during the course of that exchange, it is unclear as to whether he was simply indicating that he understood the charge or whether he was admitting to not allowing M.A. to leave the house. Once Alghamdi realized the nature of the allegations underpinning the unlawful restraint charge, he immediately asked for an attorney and indicated that he did not want to make a statement or talk to police without an attorney. Given the ambiguity that permeated his conversation with Officer Bailey, I am unconvinced that any of Alghamdi's statements therein weigh in favor of conviction.

**{¶16}** I am further unpersuaded that the remaining evidence pertaining to M.A.'s ability to access her vehicle supports a conviction for unlawful restraint. Cases where a defendant is convicted of unlawful restraint stemming from conduct pertaining to the use of a motor vehicle often entail factual scenarios where a victim is confined to a particular place. *See State v. Ricchetti*, 74 Ohio App.3d 728, 729, 732 (8th Dist.1991) (the defendant refused to comply with a passenger's request to be let out of a moving vehicle); *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 46 (the defendant "trapped" a driver in his vehicle by refusing to allow the driver to close his door until he answered a question); *State v. Rohm*, 2d

Dist. Greene No. 2009 CA 19, 2010-Ohio-1240, ¶ 13 (the defendant forced the victim to get into his vehicle against her will instead of allowing her to leave with her friend as planned). In this case, the seemingly conventional manner in which the cars were parked in the driveway and the murky evidence about the car keys, standing alone, would not seem to demonstrate that Alghamdi knowingly restrained M.A.'s liberty.

{¶17} In light of the foregoing, I respectfully dissent.

APPEARANCES:

NOAH C. MUNYER, Attorney at Law, for Appellant.

AMBER K. ZIBRITOSKY, Law Director, for Appellee.