[Cite as *State v. Wellman*, 2020-Ohio-2876.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 19CA011527 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| JOSEPH J. WELLMAN | COURT OF COMMON PLEAS |
| | COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 18CR099547 |

DECISION AND JOURNAL ENTRY

Dated: May 11, 2020

HENSAL, Judge.

{¶1} Joseph Wellman appeals his convictions in the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} K.H. had been out jogging for several hours on the evening of August 31, 2018, when she noticed a man on the opposite side of the street standing at a corner of the intersection she was approaching. Because it was close to midnight, she slowed down to a walk and turned down the volume on her headphones to assess the situation. According to K.H., because it was a man she had seen before several times in the area and he did not seem to notice her, she resumed her pace. As K.H. reached the intersection, however, the man began crossing the road toward her trying to get her attention.

{¶3} According to K.H., she took out her headphones, but a different man suddenly grabbed her from behind, put her arms behind her back, and put what she believed was his pelvis

against her. The man she had seen on the corner came up to the front of her and asked her if she wanted to party. K.H. thought it must be some sort of joke, but when she tried to pull away, the man behind her pushed into her harder, making her bend slightly forward. The man in front of her asked her again to go party with them and told her that he would give her a blast, which she interpreted as something having to do with drugs. When K.H. declined and asked to just go home, the man behind her laughed and the man in front of her grabbed her vagina over her shorts. K.H. testified that she could tell that he was trying to get his fingers under her shorts, but they were too tight. The man in front of her got very close to her face and continued encouraging her to go have a good time with them. Thinking that the men intended to rape her, K.H. stomped on the foot of man holding her, which allowed her to free one of her arms. She used that arm to elbow the man behind her in the groin, freeing her other arm. She then punched the man in front of her in the throat and began running back to her house. Because her family members were sleeping and she did not want the men to find out where she lived, K.H. did not contact the police until her family members convinced her to when she returned home from work the next day.

{¶4} Officer Brandon Szymanski testified that, after he spoke with K.H., he went to the apartment complex where she said that she had seen the man before. He intended to canvass the apartments, but then noticed a man, Mr. Wellman, who matched the description that K.H. provided. The officer decided to confirm or eliminate Mr. Wellman as a suspect before he continued his investigation, so he prepared a photo array and had another officer who was unfamiliar with the situation administer it to K.H. K.H. identified Mr. Wellman as the man who was in front of her during the attack and rated her confidence in her identification as 100%. The Grand Jury subsequently indicted Mr. Wellman for two counts of kidnapping and one count of gross sexual imposition. A jury found him guilty of the offenses, and the trial court sentenced him

to a total of six years imprisonment. Mr. Wellman has appealed his convictions, assigning two errors, which we have reordered.

## II.

## ASSIGNMENT OF ERROR II

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF KIDNAPPING IN VIOLATION OF R.C. 2905.01(B) AS THE ELEMENT OF CREATING A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

{¶5} Mr. Wellman argues that his kidnapping conviction under Revised Code Section 2905.01(B) is not supported by sufficient evidence because there was no evidence that the offense occurred "under circumstances that create a substantial risk of serious physical harm to the victim[.]" Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6} Section 2905.01(B) provides that "[n]o person, by force, threat, or deception * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * * (2) [r]estrain another of the person's liberty." Under Section 2901.01(A)(5), "[s]erious physical harm" to a person means "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment[,]" "[a]ny physical harm that carries a substantial risk of death[,]" "[a]ny physical harm

that involves some permanent incapacity * * * or that involves some temporary, substantial incapacity[,]" "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement[,]" or "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." "'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶7} According to Mr. Wellman, K.H. did not testify about any physical harm that she suffered during the incident. He argues that the only indications that K.H. experienced any mental harm was her testimony that she had stopped jogging because she is afraid to go out by herself and that she and her family had decided to move to a new home. Mr. Wellman notes that there was no evidence that K.H. sought any medical or psychiatric treatment for what occurred. Under Section 2905.01(B)(2), however, the State does not have to establish that a victim suffered serious physical harm, it only has to show that the restraint of the victim's liberty occurred under circumstances that created a substantial risk of serious physical harm to the victim. *See State v. Oldaker*, 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, ¶ 46 (concluding evidence was sufficient because even though defendant did not cause victim's injuries, he threatened victim with a gun and prevented him from seeking medical treatment for his injuries); *State v. Garner*, 9th Dist. Summit No. 25771, 2012-Ohio-1439, ¶ 13 (explaining that the analysis focuses on the circumstances of the restraint instead of defendant's conduct).

{¶8} K.H. testified that she was grabbed from behind on an otherwise vacant road late at night. The man who grabbed her put her arms behind her back and pushed against her with what K.H. believed was his pelvis, grinding it into her. Another man approached the front of K.H.,

sandwiching her between them.  When K.H. struggled to break free, the man holding her pushed into her, which had the effect of bending her forward and unable to twist to see who was holding her.  Meanwhile, the man in front of her began asking her to go party with them and offered to give her a blast.  She understood the term blast as something having to do with drugs.  When she asked to be let go so that she could go home, the man who was holding her laughed and told her no.  The man in front of her grabbed her vagina over her shorts, although she could feel him trying to work his fingers under her shorts.  He invited her again to go and have a good time with them.  At that point in time, K.H. believed that the men intended to drug, rape, or kill her.  She panicked and fought back against them, freeing herself enough that she could run home.

{¶9}    Upon review of the record, we conclude that, viewing K.H.'s testimony in a light most favorable to the prosecution, there was sufficient evidence from which a rational trier of fact could find that K.H. was restrained under circumstances that presented a substantial risk of serious physical harm to her.  The men's words and conduct established that they were interested in engaging in both drug use and sexual activity with K.H., whether she consented to it or not.  Such activities, if they had continued to occur without K.H.'s consent, would have had a substantial chance of causing K.H. to suffer multiple forms of serious physical harm.  *See* R.C. 2901.01(A)(5)(a, c, e).  In addition, there does not appear to have been anyone else in the vicinity who could have come to K.H.'s aid, if her attempt to free herself had failed.  Accordingly, we conclude that Mr. Wellman's conviction under Section 2905.01(B)(2) is supported by sufficient evidence.  Mr. Wellman's second assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE GUILTY VERDICTS ON COUNTS ONE, TWO, AND THREE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10}   Mr. Wellman also argues that his convictions are against the manifest weight of the evidence.   If a defendant asserts that his convictions are against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered.

State v. Otten, 33 Ohio App.3d 339, 340 (9th Dist.1986).   Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. Thompkins, 78 Ohio St.3d 380, at 387.   An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases.   State v. Carson, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing Otten at 340.

{¶11}   Mr. Wellman argues that K.H.'s testimony that she was out jogging for four and a half hours and then was confronted by two men but was able to beat them off and escape is incredulous.   Even if it did happen, he argues that K.H.'s identification of him as one of her attackers is a case of mistaken identity.   He notes that K.H. described the man in front of her as a pudgy, mixed-race male, who was approximately 5'10" and weighed 180-200 pounds.   She also told police that the man had a fade style haircut, possibly a tattoo on his arm, and that she thought that she had seen the man before at a certain apartment complex.   She acknowledged that the attack occurred before she had reached a nearby streetlight, which meant that the light would have become from behind the man, instead of illuminating his face.   She admitted that she was under a lot of stress and did not know how long the incident actually lasted.   She also admitted that she

had misrecognized people before and that the long period of exercise she had been engaging in could have affected her perception. Mr. Wellman also notes that, instead of canvassing the apartment complex like he initially intended, Officer Szymanski simply stopped the first man he saw at it and prepared a photo array including that man's picture. According to Mr. Wellman, K.H.'s identification of him as one of her attackers is not believable.

{¶12} The State notes that, at trial, Mr. Wellman never challenged whether the attack happened, he only denied that he was one of the men who perpetrated it. The State points out that the man in front of K.H. was so close to her face that she could smell his breath and feel his words on her face. It notes that K.H. testified that this was not the first time she had seen the man, and that her heart stopped when she saw his picture in the photo array. The jury was also provided an opportunity to have Mr. Wellman stand unobstructed in front of them, which allowed them to assess whether the description that K.H. gave to police was reasonably accurate. The State further notes that Mr. Wellman was the passenger of a vehicle that was stopped near the location of the attack two hours after it.

{¶13} Mr. Wellman recognizes in his brief, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury [i]s in the best position to evaluate the credibility of the witnesses and it [i]s entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Upon review of the record, we cannot say that the jury lost its way when it found that K.H.'s identification of Mr. Wellman as one of the men who attacked her was credible. We conclude that Mr. Wellman's convictions are not against the manifest weight of the evidence. Mr. Wellman's second assignment of error is overruled.

III.

{¶14} Mr. Wellman's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DENISE G. WILMS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.