[Cite as *State v. Huffman*, 2024-Ohio-1723.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

CODY HUFFMAN

    Appellant

C.A. Nos.     23AP0016
                23AP0017

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE Nos.    2022 CR-B 001542
              2022 CR-B 000551

DECISION AND JOURNAL ENTRY

Dated: May 6, 2024

STEVENSON, Presiding Judge.

**{¶1}** This is a consolidated appeal. Defendant-Appellant Cody Huffman appeals from the judgments of the Wayne County Municipal Court that found him guilty of aggravated menacing and violating a criminal protection order. For the reasons set forth below, this Court affirms.

I.

**{¶2}** Mr. Huffman was charged in May 2022 with one count of assault regarding B.A., a misdemeanor of the first degree, in violation of R.C. 2903.13(A), and one count of aggravated menacing regarding C.P., also a misdemeanor of the first degree, in violation of R.C. 2903.21(A). Those charges stemmed from events that took place on December 16, 2021. As a condition of his bond, Mr. Huffman was ordered to have no contact with C.P. or B.A.

**{¶3}** On October 6, 2022, while the assault/aggravated menacing case was pending, C.P. moved for a criminal protection order under R.C. 2919.26 alleging ongoing incidents with Mr. Huffman. C.P. requested protection for himself and six of his household members. An ex parte protection order was granted the same day. The ex parte protection order prohibited Mr. Huffman from having contact with C.P. and the listed household members and ordered him to stay 500 feet away from those protected persons wherever they may be found or where Mr. Huffman knew or should know they were likely to be found. Following a hearing, a full protection order was granted on November 2, 2022.

**{¶4}** In a separate case, Mr. Huffman was charged in November 2022 with one count of violating a protection order, a misdemeanor of the first degree, in violation of R.C. 2919.27(A)(1). That charge stemmed from an incident that took place on October 29, 2022, wherein Mr. Huffman allegedly came within 500 feet of C.P. in violation of the terms of the ex parte protection order.

**{¶5}** Mr. Huffman pleaded not guilty and the charges were consolidated for purposes of a jury trial. The jury found Mr. Huffman not guilty of assault, and guilty of aggravated menacing and violating a protection order. Mr. Huffman timely appealed and asserts two assignments of error for our review.

## ASSIGNMENT OF ERROR I

**MR. HUFFMAN'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE [.]**

**{¶6}** Under this assignment of error, Mr. Huffman challenges the sufficiency of the evidence only as to his conviction for violating a protection order. R.C. 2919.27(A)(1) prohibits violating a protection order and provides that:

(A) No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to section 2919.26 * * *[.]

* * *

**{¶7}** Mr. Huffman argues that the State failed to prove that he came within 500 feet of the victim, C.P., or where he would likely be, in violation of the terms of the protection order. We disagree.

**{¶8}** Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶9}** The State presented evidence that R.S. lives in an apartment across the street from C.P.'s residence. R.S. testified that on October 29, 2022, she was locked out of her apartment and was standing on the back steps waiting for the locksmith when Mr. Huffman walked by. They exchanged pleasantries and chatted briefly. R.S. further testified that C.P. then came over and asked her if the man she spoke to was Mr. Huffman. C.P. informed R.S. that Mr. Huffman was not supposed to be there due to the protection order and told R.S. to call the police.

**{¶10}** C.P. testified that on that same night, he observed Mr. Huffman at the apartments across the street from his home. C.P. described seeing a man with a hood over his head who he believed to be Mr. Huffman. C.P. said that when the hooded man moved to the lighted area in front of the utility room, he pulled his hood down and looked across the street. C.P. could see that

it was Mr. Huffman. C.P. then went across the street to talk to R.S. After verifying with R.S. that the man was Mr. Huffman, C.P. asked R.S. to call the police. C.P. testified that based on his knowledge of the distance between his front steps and the Donato's restaurant next door to R.S.'s apartment, Mr. Huffman was within 500 feet of C.P's residence.

{¶11} City of Wooster Police Officer Covington responded to the scene. He testified that upon arriving, he met with C.P. who showed him the protection order. Officer Covington also spoke with Mr. Huffman, who claimed that he had not been served with the protection order. Officer Covington could not locate the protection order in the computer system, so he contacted the Wayne County Sheriff to verify that it was in effect. At that time, the return of service had not yet been entered into the system. Erring on the side of caution, Officer Covington instructed Mr. Huffman to leave. Officer Covington was later able to verify that Mr. Huffman had been personally served with the protection order by Wayne County security officer/bailiff Stephanie Farley on October 26, 2022.

{¶12} Officer Covington testified on direct examination that he believed Mr. Huffman violated the 500-foot provision of the protection order. He first identified a football field as being "a hundred yards" or "three hundred feet" in length. When asked "from where you encountered Mr. Huffman to [C.P.'s] residence, is that less than a football field?", Officer Covington responded "most definitely."

{¶13} From the foregoing, the State provided evidence establishing Mr. Huffman's presence within 500 feet of C.P. Accordingly, the evidence, when viewed in the light most favorable to the State, would convince the average mind beyond a reasonable doubt that Mr. Huffman came within 500 feet of C.P. and was guilty of violating a protection order. Mr. Huffman's first assignment of error is without merit and overruled.

**ASSIGNMENT OF ERROR II**

**MR. HUFFMAN'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]**

**{¶14}** In this assignment of error, Mr. Huffman challenges the manifest weight of the evidence only as to his conviction for aggravated menacing.

**{¶15}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26.

**{¶16}** R.C. 2903.21(A) prohibits aggravated menacing and provides in relevant part:

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * * .

* * *

**{¶17}** Mr. Huffman argues that C.P. did not believe that Mr. Huffman was going to cause serious harm to C.P. or his property on the night of December 16, 2021, because C.P. did not seek a protection order until October 2022, almost one year after the December 16, 2021, incident, and that on October 29, 2022, C.P. walked over to R.S.'s house instead of calling the police. We disagree.

**{¶18}** Under R.C. 2901.01(A)(5), "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

Under R.C. 2901.01(A)(6), "Serious physical harm to property" means any physical harm to property that does either of the following:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

{¶19} C.P. testified that on December 16, 2021, he and his family were inside their residence when they heard yelling from outside. C.P. went to the front door and observed Mr. Huffman, who resided across the street, in the alley outside his home, screaming that he was going to kill C.P. and his family and burn C.P.'s house down. C.P. testified that he was afraid and thought Mr. Huffman would follow through on his threats because Mr. Huffman had a history of making similar threats against C.P. and his family during numerous other previous incidents. C.P. testified that he "had been calling [the police] for help, calling for help and every time I call for help."

{¶20} C.P.'s wife, J.P., testified that on the night in question, Mr. Huffman was cussing and trying to get C.P. to come outside. She corroborated C.P.'s testimony that Mr. Huffman said he was going to kill them and burn the house down. Upon observing Mr. Huffman's actions, J.P. called the police, locked the doors to the house, and secured the six minor children in the back of the house. D.W., child of C.P. and J.P., was also home that night. She testified that she heard Mr.

Huffman "screaming a bunch of things." She heard him "threaten to come after [her] family" and say he was going to kill C.P. and "was coming for us[.]"

{¶21} C.P., J.P., and D.W. all testified that they heard Mr. Huffman yelling from outside in the front of their house that he was going to kill C.P. and his family and burn their house down. Killing others and burning down a residence qualify as "serious physical harm to persons" and "serious physical harm to property" under R.C. 2901.01(A)(5)(b) and (A)(6)(a) and (b). C.P. expressed fear of Mr. Huffman based on his previous encounters with Mr. Huffman where Mr. Huffman made similar threats and the police were called. Accordingly, the testimony of three State's witnesses showed that Mr. Huffman caused C.P. to "believe that [Mr. Huffman] will cause serious physical harm to the person or property of the other person[.]" R.C. 2903.21(A).

{¶22} Upon review of the evidence, this Court concludes that Mr. Huffman has not shown that the jury lost its way when it chose to believe the State's evidence and found him guilty of aggravated menacing. The State presented three witnesses from whose testimony the jury could have reasonably concluded that Mr. Huffman committed the crime of aggravated menacing. That evidence conflicts with the fact that C.P. waited almost one year to seek a protection order. However, the jury, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence and was free to believe the State's theory of the events and reject Mr. Huffman's version. *See State v. Shank,* 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29.

{¶23} Accordingly, this Court rejects Mr. Huffman's argument that his conviction for aggravated menacing is against the manifest weight of the evidence. Mr. Huffman's second assignment of error is overruled.

III.

**{¶24}** Based on the foregoing, the judgments of the Wayne County Municipal Court finding Mr. Huffman guilty of aggravated menacing and violating a protection order are affirmed.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

YU KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JONATHAN HAMERS, Assistant Prosecuting Attorney, for Appellee.