[Cite as *State v. Henning*, 2019-Ohio-2200.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| --- | --- | --- | --- |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 29128 |
| --- | --- |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHAD HENNING | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2018-02-0472 |

DECISION AND JOURNAL ENTRY

Dated: June 5, 2019

TEODOSIO, Presiding Judge.

{¶1}  Defendant-Appellant, Chad Henning, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}  L.R. is the mother of Mr. Henning's two children.  Early one evening, she called 911 because Mr. Henning had come to her home and had "choked [her] out."  The officer who responded spoke with L.R. and learned that Mr. Henning had strangled her while the two were having an argument.  The officer took pictures of her injuries and had her complete a written statement.  L.R. was hesitant to press charges, however, as Mr. Henning had two previous domestic violence convictions, she loved him, and she did not want him to go to jail.  The officer ultimately told L.R. that he would sign the charge against Mr. Henning once he filed his report.

{¶3}  Within two hours of the officer's departure, L.R. attempted to retract her statement.  She called 911 and told the operator that she had falsely accused Mr. Henning

because she was angry with him. Though she wished to have any potential charges withdrawn, the case nonetheless proceeded. A grand jury indicted Mr. Henning on one count of domestic violence, a third-degree felony due to his two prior domestic violence convictions.

{¶4} At Mr. Henning's trial, the State presented the testimony of two officers, as well as sound recordings of L.R.'s 911 calls and several jail calls. Meanwhile, L.R. took the stand for the defense and declared Mr. Henning innocent. Despite her testimony, the jury found Mr. Henning guilty of domestic violence. It further found that he had been convicted of domestic violence on two prior occasions. The court sentenced him to 18 months in prison.

{¶5} Mr. Henning now appeals from his conviction and raises three assignments of error for our review. For ease of analysis, we rearrange the assignments of error.

II.

**ASSIGNMENT OF ERROR THREE**

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his third assignment of error, Mr. Henning argues that his conviction is against the manifest weight of the evidence. We do not agree.

{¶7} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony."

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶8}** Officer William Lagasse testified that he responded to L.R.'s home after he received a dispatch about a fight having occurred there. L.R. answered the door when he knocked and appeared "visibly upset." He noted that she was crying and had marks on her neck. She told Officer Lagasse that she and Mr. Henning had argued and, during their argument, "he had put his hands around her neck and choked her * * *." The officer testified that the marks on her neck appeared to be consistent with choking. As they spoke, L.R. allowed Officer Lagasse to photograph her injuries.

**{¶9}** Officer Lagasse believed L.R. had been drinking because her speech was slightly slurred, but he did not detect any odor of alcohol coming from her person. As he spoke with her, she repeatedly indicated that she loved Mr. Henning and did not want him to go to jail. The officer agreed that L.R. was very reluctant to press charges, which, in his experience, was a common thread among victims of domestic violence. He testified, however, that L.R. never wavered in her assertion that it was Mr. Henning who had injured her. L.R. was simply adamant that she only wanted Mr. Henning to get help.

**{¶10}** The State also played, as part of its case-in-chief, L.R.'s initial 911 call and several more 911 calls that she placed about two hours after Officer Lagasse left her home. In her initial call, L.R. tells the dispatcher that her "baby dad choked [her] out." The dispatcher then seeks additional information about the man's identity and current location. L.R. responds

by identifying Mr. Henning as her accoster and by audibly breaking down and crying as she tells the dispatcher that he "just left" her home.

{¶11} In her remaining 911 calls, L.R. indicates that she has called because she needs to retract a false police report. She informs the dispatcher that she falsely accused Mr. Henning of attacking her because she was upset that he had cheated on her, she had been drinking, and she decided to cause him trouble. She repeatedly asks the dispatcher if she can recall her report and her false accusations.

{¶12} Deputy John Barrickman testified that he is assigned to the Summit County Jail and capable of retrieving phone calls placed by its inmates. The State introduced through his testimony two jail call recordings, the first of which was a call between L.R. and an inmate calling on Mr. Henning's behalf and the second of which was a call between L.R. and Mr. Henning. In the first call, the inmate assures L.R. that Mr. Henning loves her and implores her to avoid the trial if she does not "wanna hang [Mr. Henning]." In the second call, Mr. Henning attempts to reassure L.R. and informs her that a case cannot go forward if the alleged victim chooses not to come to the trial.

{¶13} L.R. appeared at trial to testify on behalf of Mr. Henning. She denied that he ever came to her house on the day she called 911. She testified that the marks on her neck were the result of a fight she had had earlier in the day with a woman about a "situation," but she was hesitant to divulge any details about the situation or the woman's identity. She claimed that she became angry with Mr. Henning when she spoke with him around 11:00 a.m. or 12:00 p.m. that day because he was refusing to pick up their children from his mother's house. According to L.R., she began drinking and became progressively angrier until she finally called 911 and

fabricated the story that Mr. Henning had attacked her. She claimed that she was "really drunk" when she spoke with Officer Lagasse and could not remember much of what she told him.

{¶14} While cross-examining L.R., the State played for her several more jail call recordings. L.R. admitted that Mr. Henning had called her a few times after his arrest, that they had experienced arguments, that he had threatened to kill her, and that he had threatened to expose certain information about her if she did not appear before the grand jury and profess his innocence. Nevertheless, L.R. maintained that Mr. Henning was, in fact, innocent and that she had falsely accused him.

{¶15} Having reviewed the record, we cannot conclude that the jury lost its way when it found Mr. Henning guilty of domestic violence. The jury heard L.R.'s initial 911 call, as well as Officer Lagasse's testimony, and saw photographs of the marks on her neck. Officer Lagasse indicated that L.R.'s speech was somewhat slurred when they spoke, but he did not detect any noticeable odor of alcohol on her person and never testified that she was impaired to any significant degree. Instead, he indicated that she was upset and extremely hesitant to press charges against Mr. Henning because she loved him and did not want to see him go to jail. Although L.R. attempted to recant her statements, "the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of [their] testimony * * *." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. The jury reasonably could have chosen to believe L.R.'s initial statements, as she made them much closer in time to the attack and before she had additional time to reflect on them. Further, this Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. Mr. Henning has not

shown that this is the exceptional case where the evidence weighs heavily against his conviction. *See Thompkins*, 78 Ohio St.3d at 387. As such, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR ONE

ALLOWING THE INVESTIGATING POLICE OFFICER TO ORALLY TESTIFY AS WELL AS ADMIT HIS BODY CAMERA REGARDING WHAT THE ALLEGED VICTIM TOLD HIM WAS PREJUDICIAL ERROR AND A VIOLATION OF APPELLANT'S SIXTH AMENDMENT RIGHTS.

{¶16} In his first assignment of error, Mr. Henning argues that the trial court erred when it allowed the State to introduce L.R.'s statements through the testimony of Officer Lagasse and his body camera recording. He argues that L.R.'s statements were hearsay and that their admission violated his rights under the Confrontation Clause. Upon review, we reject his arguments.

{¶17} The question of whether statements are admissible under the Rules of Evidence and the question of whether they are admissible under the Confrontation Clause are separate inquiries. *State v. Miller*, 9th Dist. Lorain No. 14CA010556, 2016-Ohio-4993, ¶ 11, quoting *State v. Nevins*, 171 Ohio App.3d 97, 2007-Ohio-1511, ¶ 36 (2d Dist.). Admissibility determinations under the evidentiary rules generally fall within the sound discretion of the trial court. *See State v. Campbell*, 9th Dist. Summit No. 24668, 2010-Ohio-2573, ¶ 26. Accordingly, we will review them for an abuse of discretion and uphold them so long as the court's attitude was not unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). *Accord Akron v. Hutton*, 9th Dist. Summit No. 22425, 2005-Ohio-3300, ¶ 7 (abuse of discretion standard applied when reviewing court's decision to admit hearsay declarations as excited utterances). Meanwhile, "[w]e review [a] trial court's admission of evidence over a Confrontation Clause objection de novo." *State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 14. "When applying the de novo standard of review, this Court gives no deference

to the trial court's legal determinations." *State v. West*, 9th Dist. Lorain No. 04CA008554, 2005-Ohio-990, ¶ 33.

{¶18} An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

> To be admissible under Evid.R 803(2) as an excited utterance, a statement must concern "some occurrence startling enough to produce a nervous excitement in the declarant," which occurrence the declarant had an opportunity to observe, and must be made "before there had been time for such nervous excitement to lose a domination over his reflective faculties."

*State v. Huertas*, 51 Ohio St.3d 22, 31 (1990), quoting *Potter v. Baker*, 162 Ohio St. 488 (1955), paragraph two of the syllabus. "[T]he admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Wallace*, 37 Ohio St.3d 87, 93 (1988).

{¶19} L.R. initially called 911 just before 5:15 p.m. While breaking down and crying, she told the dispatcher that Mr. Henning had "just left" her home after he "choked [her] out." L.R. was still crying when Officer Lagasse arrived at her home "closer to 7:00." When he asked her what had happened, L.R. once again stated that Mr. Henning had choked her. Officer Lagasse described L.R. as being "visibly upset" during their exchange. He also described her as being conflicted. He noted that she was hesitant to press charges, repeatedly indicated that she loved Mr. Henning, and worried about him going to jail. In addition to Officer Lagasse's testimony, the State played for the jury the video recording taken from his body camera. The recording captured his entire exchange with L.R.

{¶20} Mr. Henning argues that the court erred when it allowed Officer Lagasse to testify about L.R.'s statements and permitted the State to introduce his body camera recording. Mr. Henning asserts that all of L.R.'s statements to the officer were hearsay, as none of them qualified as excited utterances. He notes that no emergency was occurring at the time the officer spoke with L.R. and nearly two hours had passed since the alleged incident had transpired. He further notes that L.R. promptly recanted her statements; "a clear indicator of reflective thinking." Because L.R. was not under the stress of an exciting event at the time she spoke with Officer Lagasse, Mr. Henning argues that her statements were inadmissible.

{¶21} Upon review, we cannot conclude that the trial court abused its discretion when it determined that L.R.'s statements to Officer Lagasse qualified as excited utterances. *See Hutton*, 2005-Ohio-3300, at ¶ 7. At the time the officer spoke with L.R., she was very upset. She repeatedly cried during their encounter and expressed her concern for Mr. Henning, stating again and again that she loved him and did not want to see him get into trouble. Their conversation also occurred relatively soon after the choking incident, given that Officer Lagasse arrived around 7:00 p.m. and Mr. Henning had "just left" around 5:15 p.m. Upon review, it was not unreasonable for the trial court to conclude that L.R.'s demeanor, in conjunction with the relatively short amount of time that had elapsed, evidenced that she was still under the stress of the excitement caused by Mr. Henning's assault. *See State v. Horton*, 9th Dist. Wayne No. 16AP0024, 2017-Ohio-9078, ¶ 21-22.

{¶22} Notably, Mr. Henning has not accounted for the statements L.R. made to the 911 dispatcher. During her initial 911 call, L.R. specifically stated that Mr. Henning had "choked [her] out." Mr. Henning has neither challenged the admission of that statement on appeal, nor explained how its admission affects the merits of his argument. *See* App.R. 16(A)(7). While it

is our conclusion that the trial court acted within its sound discretion when it admitted L.R.'s statements through Officer Lagasse, we would note that those statements were, at least in part, merely corroborative of the 911 statements that Mr. Henning has not challenged. *See State v. Jackson*, 9th Dist. Summit No. 24650, 2009-Ohio-4863, ¶ 15 (appellant not prejudiced by the admission of testimony that was corroborative in nature). For the foregoing reasons, we reject Mr. Henning's assignment of error insofar as it concerns the admissibility of L.R.'s statements under the evidentiary rules.

**{¶23}** Mr. Henning also argues that his rights under the Confrontation Clause were violated when the court allowed the State to introduce L.R.'s statements through the testimony of Officer Lagasse and his body camera recording. Yet, "the admission of hearsay does not violate the Confrontation Clause if the declarant testifies at trial." *State v. Keenan*, 81 Ohio St.3d 133, 142 (1998). *Accord Crawford v. Washington*, 541 U.S. 26, 59 (2004), fn. 9 ("The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). Because L.R. testified on Mr. Henning's behalf, he cannot complain that the admission of her out-of-court statements violated his rights under the Confrontation Clause. *See Keenan* at 142. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

ADMITTING THE JAIL HOUSE CALLS OF APRIL 17 AND 18 WAS IN CONTRAVENTION OF RULES OF EVIDENCE 403 AND 804(B)(6) AND PREJUDICIAL TO APPELLANT'S RIGHT TO A FAIR TRIAL.

**{¶24}** In his second assignment of error, Mr. Henning argues that the trial court abused its discretion when it admitted the recordings of two jail calls. This Court described both calls in the context of Mr. Henning's third assignment of error. In the first call, a fellow inmate of Mr.

Henning's implored L.R. not to testify against Mr. Henning. In the second call, Mr. Henning spoke with L.R. himself and mirrored that sentiment. Mr. Henning asserts that both calls contained inadmissible hearsay statements and their probative value was substantially outweighed by the danger of unfair prejudice. Even assuming the calls were inadmissible, however, Mr. Henning has not demonstrated that their admission affected his substantial rights. *See* Crim.R. 52(A) (errors that do not affect substantial rights "shall be disregarded"). The jury heard L.R. inform the 911 dispatcher that Mr. Henning had choked her. They also heard Officer Lagasse testify that L.R. named Mr. Henning as her accoster, but was extremely reluctant to press charges against him. Further, the jury heard L.R. testify on behalf of Mr. Henning and had the ability to assess her credibility first-hand. *See Shank*, 2013-Ohio-5368, at ¶ 29. Mr. Henning has not shown that, but for the admission of the jail calls, the jury would not have convicted him. *See id.* As such, his second assignment of error is overruled.

III.

**{¶25}** Mr. Henning's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

HENSAL, J.
CONCURRING IN JUDGMENT ONLY.

{¶26} Mr. Henning has not challenged the admission of the statements that L.R. made during her initial 911 call. L.R. specifically informed the 911 operator that Mr. Henning had choked her. Her later statements to Officer Lagasse were cumulative in nature because the jury could have concluded, based strictly on the admission of her initial statements, that the State set forth sufficient evidence in support of Mr. Henning's conviction. *See, e.g., State v. Rivera*, 9th Dist. Lorain No. 18CA011263, 2019-Ohio-62, ¶ 43. Because L.R.'s statements to Officer Lagasse were cumulative in nature, I would not address Mr. Henning's argument that the court erred by admitting them as excited utterances. Even assuming that the court erred in its admissibility determination, Mr. Henning has not demonstrated resulting prejudice. *See* Crim.R. 52(A). As such, I would reject his argument on that basis alone.

APPEARANCES:

BRIAN J. WILLIAMS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.