[Cite as *State v. Potts*, 2023-Ohio-4849.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

JEROLD R. POTTS

    Appellant

C.A. No.     22CA0059-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    20CR0865

DECISION AND JOURNAL ENTRY

Dated: December 29, 2023

FLAGG LANZINGER, Judge.

{¶1} Defendant-Appellant Jerold R. Potts appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Following a November 2020 argument between Potts and his sister, Potts was indicted on two counts of felonious assault. The trial court ordered a competency evaluation, and Potts was found to be incompetent to stand trial. Potts received treatment at a facility and restored to competency. This Court notes that Potts and his counsel maintained below that Potts was competent to stand trial, and have not challenged the competency findings on appeal.

{¶3} The matter proceeded to a jury trial, at which Potts represented himself with standby counsel available to him. After repeatedly disrupting the proceedings, the trial court ordered Potts to be returned to the jail and he participated in the proceedings remotely.

{¶4} The jury found Potts guilty. The trial court ordered a presentence investigation report. Counsel represented Potts at sentencing. The trial court determined that the counts were allied offenses, merged them for purposes of sentencing, and sentenced Potts to prison for a minimum term of 3 years and a maximum term of 4.5 years, with credit for time served.

{¶5} Potts has appealed, raising six assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT
OF GUILTY.

{¶6} Potts argues in his first assignment of error that the guilty verdicts were based upon insufficient evidence. Essentially, Potts asserts that there was insufficient evidence that he committed the crimes at issue. This Court disagrees.

{¶7} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8} Potts was convicted of felonious assault under R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2). R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." "Serious physical harm" includes "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious

disfigurement[.]" R.C. 2901.01(A)(5)(d). R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." "'Physical harm to persons' means any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3). For purposes of R.C. 2903.11, a "[d]eadly weapon" means "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2903.11(E)(1); R.C. 2923.11(A). Here, the State proceeded under the theory that Potts knowingly caused physical harm and serious physical harm to his sister because his sister sustained a cut on her head that required stitches, as well as a chipped tooth during their altercation. The State also proceeded under the theory that the frying pan was a deadly weapon under the facts of this case.

{¶9} At the time of the events at issue, Potts, Potts' sister, Potts' sister's daughter ("Niece"), and Niece's boyfriend were living in a house owned by Potts' sister. Potts' sister, the victim in this case, provided the following statement to police, which was admitted into evidence:

> Around 2:00 pm on Sunday November 22, 2020, I asked my brother Jerry Potts if he would assist in bringing a piece of furniture into the house[.] [H]e became angry and said I didn't have his permission. I told him I didn't need his permission. He then went back upstairs and came back down again and said he was making his tea. He then took the wet tea bags and threw them at me and onto the floor[] because I had moved the garbage can out of the mudroom to make room for the entertainment center. I picked the tea bags up and threw them back at him. He moved towards me in a threat[ening] manner. He raised his fist to hit me a few times and then stopped and picked up the pan he made his tea in [and] raised the pan a few times to strike me and I told him don't do it. I didn't think he would do it so I let my guard down and he struck me to the left temple with the 12" stainless steel fry[ing] pan. I called out to my daughter to call the police. When she came into the room he started grabbing her and t[old] her to get out of the house[.] [H]e then grabbed her by her feet and drug her out the front door. I went outside to help[.] [H]e slammed the door and locked us out. Daughter called 911 and we waited for medical [and] law enforcement.

{¶10} Potts' sister sustained a cut on her head that required stitches to close and also chipped a tooth during the altercation. Potts' sister confirmed several of the background details

during her testimony at trial; however, her testimony concerning the substance of the events was markedly different. At trial, Potts' sister indicated that she and Potts were arguing and confirmed that she was hit with the pan. She testified that she was on the way out of the door when she was hit with the pan but did not see Potts hit her. Potts' sister admitted that only she and Potts were in the room at the time and that she did not hit herself with the pan. Potts' sister testified that she "believe[d] in [her] heart that [] [Potts] did not [hit her.]" She also thought it was an accident and Potts could have banged the pan against the counter in frustration thereby causing the handle to break and inadvertently injuring her. Potts' sister maintained that Potts did not hurt her.

{¶11} When asked about her statement, detailed above, Potts' sister admitted that it was her writing and signature but pointed out that she provided a revised statement months later. Potts' sister refused to read her original witness statement out loud because she did not believe it to be true and claimed to be under duress. A video of some of her and Niece's interactions with police was submitted into evidence. It does not tend to support Potts' sister's claims of duress.

{¶12} Niece also testified at trial. She confirmed that on November 22, 2020, Potts' sister went into the house to ask Potts to help bring in the entertainment center they picked up. Potts was angry. Niece described Potts grumbling about Niece being there and then Potts and Potts' sister went back into the house. Niece followed inside a few minutes later and went to the bathroom. While there, Niece heard Potts' sister yell out to Niece to call the police. Niece came out and saw Potts' sister in the kitchen, hunched over with blood coming from her head. Potts was over by the stove but Niece did not see anything in his hands. Niece called Potts a name and Potts yelled at Niece to get out of his house. Potts then proceeded to drag Niece forcibly out of the house. Potts' sister followed outside and Potts locked Potts' sister and Niece outside. Potts' sister told Niece that Potts had hit her. Niece called 911.

**{¶13}** Officer Jared Singleton with the Hinckley Police Department testified about responding to the incident involving Potts. When Officer Singleton arrived on scene, Potts' sister and Niece were outside. Potts' sister had a laceration on the left side of her head, and it was still bleeding. When EMS arrived Potts' sister and Niece were transported to the hospital.

**{¶14}** At that time, Officer Singleton began calling out to Potts on the PA system in an attempt to get him to come outside. Potts did not come outside. Police then entered the house with a key police had been provided. Potts was ultimately located upstairs in the attic and arrested. Officer Singleton was present when Potts' sister completed her statement and testified that she gave it voluntarily and accepted a temporary protection order.

**{¶15}** Later Niece helped Potts' sister look for the pan. It was located upstairs in the attic in a crawlspace. Subsequently, the handle for the pan was located in a garbage can. Both were found in an area Potts occupied. Both items were taken to the police station. Potts' sister wrote a statement indicating where she found the pan and stating that it was the pan that she was struck with and describing the events as an assault committed by Potts.

**{¶16}** Potts did not present any witnesses in his defense.

**{¶17}** Potts has not demonstrated that the guilty verdicts were based upon insufficient evidence. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. To that end, there was evidence presented from which it could be concluded that Potts hit Potts' sister with a metal frying pan causing an injury that required stitches and also resulted in a chipped tooth. The fact that there was also evidence presented tending to support that Potts did not hit Potts' sister does not negate the evidence that demonstrates Potts' involvement.

**{¶18}** Potts' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE.

{¶19} In his second assignment of error, Potts argues that his convictions were against the manifest weight of the evidence. This Court disagrees.

{¶20} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶21} In support of his assignment of error, Potts notes that his sister testified that she did not see who struck her with a frying pan, that she thought it was an accident, and that she was under duress when she made her initial statement to the police. Potts' sister's testimony at trial, however, contradicted her prior statement to the police wherein she stated that Potts struck her in the head with a frying pan, which resulted in her sustaining a cut on her head that required stitches. Potts' sister also suffered a chipped tooth during the altercation. Additionally, as previously noted, the State introduced a video of some of Potts' sister's interactions with the police, which did not support her claim that she was under duress at any time.

{¶22} Although Potts' sister attempted to recant her statements to the police, "the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of [their] testimony * * *." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M,

2013-Ohio-5368, ¶ 29. The jury reasonably could have chosen to believe Potts' sister's initial statements, as she made them much closer in time to the attack and before she had additional time to reflect on them. *See State v. Henning*, 9th Dist. Summit No. 29128, 2019-Ohio-2200, ¶ 15. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. Potts has not shown that this is the exceptional case where the evidence weighs heavily against his conviction. *See Thompkins*, 78 Ohio St.3d at 387. Accordingly, Potts' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

RECORD IS DEVOID OF VOLUNTARY, KNOWING AND INTELLIGENT WAIVER OF RIGHT TO COUNSEL BY APPELLANT AND IT WAS NOT DONE IN WRITING AND THUS CONVICTION MUST THEREFORE BE VACATED.

{¶23} Potts maintains in his third assignment of error that the trial court failed to obtain a voluntary, knowing, intelligent waiver of counsel and that the record contains no signed written waiver as required by Crim.R. 44(C). This Court disagrees.

{¶24} "The Sixth Amendment to the United States Constitution provides: 'In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence.'" *State v. Gilcreast*, 9th Dist. Summit No. 29347, 2020-Ohio-1207, ¶ 7, quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 22; *accord* Ohio Constitution, Article I, Section 10. "The structure of the Sixth Amendment also implicitly provides a constitutional right to self-representation, as [t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." (Internal quotations and citation omitted.) *Gilcreast* at ¶ 8. "A defendant may proceed to defend himself without counsel when he knowingly, intelligently, and voluntarily elects

to do so." *Id.*; *see also* Crim.R. 44(A) ("Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant at every stage of the proceedings from their initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of their right to assigned counsel, knowingly, intelligently, and voluntarily waives their right to counsel.").

{¶25} Crim.R. 44(C) provides that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing." Felony cases are serious offense cases. *See Gilcreast* at ¶ 10. "While literal compliance with Crim.R. 44(C) is the preferred practice, the written waiver provision of Crim.R. 44 is not a constitutional requirement, and, therefore, [] trial courts need demonstrate only substantial compliance." *Martin* at ¶ 38.

{¶26} "[T]he trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel. If substantial compliance is demonstrated, then the failure to file a written waiver is harmless error." (Internal quotations and citation omitted.) *Id.* at ¶ 39. "The information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." (Internal quotations and citation omitted.) *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, ¶ 19, quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). An accused's waiver of the right to counsel can be said to be knowing when the accused is made aware of certain basic facts such as the usefulness of counsel to the accused at the proceeding as well as the dangers of proceeding without counsel. *Id.* "While no one factor is dispositive, the [] court should consider whether the defendant was

advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances." *State v. Clark*, 9th Dist. Medina No. 17CA0066-M, 2018-Ohio-3932, ¶ 9, quoting *State v. Bloodworth*, 9th Dist. Summit No 26346, 2013-Ohio-248, ¶12. "Whether a defendant voluntarily, intelligently, and knowingly waived his right to counsel is 'determined by the totality of circumstances.'" *State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, ¶ 103, quoting *State v. Moore*, 81 Ohio St.3d 22, 31 (1998). The determination "necessarily requires a thorough review of the record." *Id.*

{¶27} After reviewing the record, we conclude that the trial court  substantially complied with Crim.R. 44(A). After the jury was selected, Potts' trial counsel indicated that Potts no longer wanted trial counsel representing him. The trial court then began to question Potts about this. Potts initially indicated that he did not want an attorney. The trial court then temporarily dismissed the jury. The trial court again spoke to Potts, who indicated his desire for an attorney. Then, Potts changed his mind almost immediately and expressed a desire to represent himself with standby counsel. The proceedings were then adjourned for the day and resumed with standby counsel present.

{¶28} The trial court explained to Potts that it had to inform him of certain information before he could represent himself. The trial court then spent a substantial amount of time informing Potts of various things including the charges, the penalties associated with the charges, the definitions of various terms, defenses that might apply, a discussion of lesser included offenses, allied offenses, post-release control, the inability to have hybrid representation, as well as an explanation of what that was, the importance of having counsel, and a recitation of the last plea offer made by the State.

{¶29} Towards the end of the trial court's explanation, Potts expressed interest in having a prior attorney be his counsel and the trial court indicated that Potts' current standby counsel was available to talk with and Potts could not choose standby counsel or have more than one standby counsel. Potts then asked if the plea offer was still available, and the State told Potts that it was not. Potts responded that he would just go forward Monday, despite the fact that it was Wednesday. The trial court then ordered the jury to be brought in and indicated that it would be going forward with opening statements. The trial court asked Potts if he wished to execute a waiver of counsel in writing. Potts responded by asking what the trial court meant by waiver and if that meant, "Have him available?" The trial court restated that it was a written waiver of counsel and Potts then moved to have the matter continued to Monday and then to have the jury dismissed. The trial court denied both requests and stated that it should be noted that Potts refused to sign the waiver of counsel. The document was filed, unsigned, and is a part of this Court's record. The trial then proceeded with Potts representing himself with standby counsel available to him.

{¶30} The record reflects that Potts was continuously non-responsive to questions posed by the trial court and obstructive to the proceedings while the trial court discussed Potts' decision to proceed without counsel. Potts interjected numerous times, including making errant comments, posing questions to the trial court, and requesting that the trial court provide him with a copy of its signed commission from the governor. Potts also asked whether the trial court was offering him a contract and–if so–requesting a full disclosure. Notwithstanding his numerous interruptions, Potts repeatedly insisted to the trial court that he wanted to represent himself. To the best of the trial court's ability, the trial court informed Potts of the nature and consequences of the charges and possible defenses. Potts refused to sign the waiver of the right to counsel and refused to answer

most questions in a responsive manner. The only option for the trial court was to advise Potts of the dangers of proceeding without counsel.

**{¶31}** As this Court has observed, "cases discussing waiver of counsel and self-representation 'presuppose[] a cooperative defendant willing to engage in reciprocal dialogue with the court' rather than 'an uncooperative defendant [who] has refused to accept appointed counsel or engage in a colloquy with the court.'" (Alterations sic.) *State v. Tucker*, 9th Dist. Lorain No. 14CA010704, 2016-Ohio-1354, ¶ 14, quoting *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir.2008). Here, like in *Tucker*, the trial court was faced with "an unusual situation and an uncooperative defendant[.]" *Id.* at ¶ 20. Under the totality of the circumstances, the trial court substantially complied with the requirements of Crim.R. 44(A). *See id.*; *accord State v. Simon*, 4th Dist. Gallia No. 20CA14, 2021-Ohio-3090, ¶ 33, 40, 44 (addressing a situation "very similar to *Tucker*" and holding that the trial court complied with Crim.R. 44 when dealing with an uncooperative defendant who identified as a "Moorish American" and refused to sign a waiver of his right to counsel); *State v. Jordan*, 1st Dist. Hamilton No. C-190453, 2020-Ohio-4447, ¶ 11 (holding that the trial court substantially complied with Crim.R. 44 when dealing with an uncooperative defendant who identified as a "sovereign citizen[]" and "seem[ed] to delight in obfuscation[.]"). Potts' third assignment of error, therefore, lacks merit and is overruled.

## ASSIGNMENT OF ERROR IV

THE COURT'S COMMITMENT OF POTTS TO JAIL DURING THE TRIAL AND IN THE PRESENCE OF THE JURY CONSTITUTES REVERSIBLE ERROR, AS AN ENCROACHMENT UPON THE RIGHT OF THE JURY FREELY TO CONSIDER A WITNESS' TESTIMONY (IN THIS CASE POTTS, UNINFLUENCED BY THE COURT'S OPINION AS TO THE CREDIBILITY OF THE WITNESS OR THE WEIGHT OF THE TESTIMONY.)

{¶32} In his fourth assignment of error, Potts argues that trial court violated his constitutional rights by removing him from the courtroom and requiring him to attend the trial via video conference from the jail. This Court disagrees.

{¶33} "A defendant's presence is required at trial unless he waives his right or extraordinary circumstances exist requiring exclusion, such as his misconduct." *State v. Dumas*, 7th Dist. Mahoning No. 12 MA 31, 2015-Ohio-2683, ¶ 19. "When a defendant's conduct in the courtroom is so disruptive that a hearing or trial cannot reasonably proceed, the trial court has the discretion to order the defendant removed." *State v. Thrower*, 9th Dist. Summit No. 14967, 1991 WL 149576, *7 (July 31, 1991), citing Crim.R. 43(B). To that end, Crim.R. 43(B) provides:

> Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence, the hearing or trial may proceed in the defendant's absence or by remote presence, and judgment and sentence may be pronounced as if the defendant were present. Where the court determines that it may be essential to the preservation of the constitutional rights of the defendant, it may take such steps as are required for the communication of the courtroom proceedings to the defendant.

This Court reviews a trial court's decision to remove a defendant from trial for disruptive behavior for an abuse of discretion. *State v. Burrage*, 8th Dist. Cuyahoga No. 66520, 1995 WL 32712, *4 (Jan. 26, 1995) ("We review a trial court's decision to remove a defendant from the courtroom for an abuse of discretion."); *Dumas* at ¶ 19.

{¶34} The record reflects that Potts was repeatedly disruptive during trial, including while the trial court was trying to relay information to Potts about his decision to proceed without an attorney, and during his sister's testimony. Potts interjected numerous times, including making errant comments, posing questions to the trial court, attempting to address the jury directly, and asking whether the trial court was offering him a contract and–if so–requesting a full disclosure. The record reflects that the trial court remained patient with Potts but ultimately warned him that

his continued disruptive behavior would result in his removal from the courtroom, which the trial court explicitly indicated it did not want to do. Despite the trial court's warning, Potts continued with his disruptive behavior, which prompted the trial court to ask Potts if he planned to conduct himself correctly, to which Potts responded "No[.]" At that point, the trial court removed Potts from the courtroom and informed him that he would be participating in the trial from the jail. Thereafter, Potts participated in the trial via video conference from the jail.

{¶35} Having reviewed the record, this Court concludes that the trial court did not abuse its discretion by removing Potts from the courtroom due to his disruptive behavior, and requiring him to participate in the trial via video conference from the jail. The trial court displayed patience with Potts and only removed him from the courtroom after Potts continued with his disruptive behavior and expressly informed the court that he did not intend to conduct himself appropriately. Potts' fourth assignment of error, therefore, lacks merit and is overruled.

## ASSIGNMENT OF ERROR V

THE COURT IMPROPERLY DENIED APPELLANT'S MOTION TO DISMISS AS NO CRIME OCCURRED AND COURT LACKED JURISDICTION OVER POTTS. THE COURT AND PROSECUTION FAILED TO PROVIDE PROOF OF OATH UNDER DUTIES PER [] [R.C.] 107.05[.]

{¶36} In his fifth assignment of error, Potts argues that the trial court erred by denying his motion to dismiss at trial because no crime occurred and the trial court lacked jurisdiction over him. For the following reasons, this Court disagrees.

{¶37} The record reflects that, during trial, Potts asked the trial court for a copy of its oath of office, and then demanded that the matter be "discharged[.]" The trial court informed Potts that it had been duly elected and sworn in as a judge for a six-year term, and that its oath of office was on file with the clerk's office. On appeal, Potts appears to argue that the trial court was required to provide him with a copy of the oath of office. He also argues that the trial court lacked subject

matter jurisdiction and personal jurisdiction over him because the Court of Common Pleas "could not obtain jurisdiction over him without his consent and that 'there could be no consent without a 'contract' with the Medina Court corporation.'" Potts' argument is not only difficult to discern, but is unsupported by any law or meaningful analysis. *See* App.R. 16(A)(7). The only law Potts cites is R.C. 107.05, which provides that "[a] judge * * * shall be ineligible to perform any duty pertaining to his office until he presents to the proper officer a legal certificate of his election or appointment, and receives from the governor a commission to fill such office." Nothing in that statute requires a trial judge to provide a criminal defendant with his or her oath of office in order to obtain jurisdiction (subject matter or personal) over the defendant. In short, Potts has not established that the trial court lacked subject matter or personal jurisdiction over him, nor has he established that the trial court erred by not ordering the case to be "discharged" on the basis that (per Potts) no crime occurred. Potts' fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

POTTS' SENTENCE WAS EXCESSIVE[.]

{¶38} In his sixth assignment of error, Potts argues that the trial court imposed an excessive sentence because the record indicates that he loves his sister, that he does not have a prior criminal record, and that his sister recanted her initial statement to the police. Potts also appears to argue that the trial court's sentence in this case was punishment for his outbursts during trial, as well as for his disagreement with the judicial system. For the following reasons, this Court disagrees.

{¶39} In reviewing a felony sentence, "[t]he * * * standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that:

(1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶40} A sentencing court has "full discretion to impose a prison sentence within the statutory range" and is not "required to make findings or give their reasons for imposing * * * more than the minimum sentence[ ]." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "[N]evertheless, * * *, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38. "Unless the record shows that [a] court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 9th Dist. Medina No. 13CA0054-M, 2014-Ohio-3651, ¶ 8, quoting *State v. Boysel*, 2d Dist. Clark No. 2013-CA-78, 2014-Ohio-1272, ¶ 13.

{¶41} As previously noted, the trial court concluded that the two counts of felonious assault were allied offenses that merged for purposes of sentencing. It then sentenced Potts for the count under R.C. 2903.11(A)(1), a second-degree felony. R.C. 2903.11(D)(1)(a). R.C. 2929.14(A)(2)(a) provides that the minimum prison sentence for a second-degree felony is two years. The maximum prison sentence is eight to twelve years. *Id.*; R.C. 2929.144(B)(1) (regarding calculating maximum prison terms). Here, the trial court sentenced Potts to a minimum prison

term of 3 years and a maximum prison term of 4.5 years with credit for time served, which is well within the statutory range. Additionally, nothing in the record indicates that the trial court imposed this sentence as punishment for Potts' behavior during trial. Potts has not established that the record fails to support the trial court's findings under the relevant statutes, and has likewise failed to establish that his sentence is otherwise contrary to law. Accordingly, Potts' sixth assignment of error is overruled.

## III.

{¶42} Potts' assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

JILL FLAGG LANZINGER
FOR THE COURT


SUTTON, P. J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶43} I concur in the majority's decision to the extent it affirms the trial court's judgment as to Potts' first assignment of error. However, I respectfully dissent to the extent that it overrules Potts' third assignment of error. I would sustain Pott's third assignment of error and decline to address the remaining arguments.

{¶44} Despite the voluminous information provided to Potts by the trial court, I cannot say that the record discloses that Potts understood the information. The trial court's presentation of information was largely a monologue, as opposed to a colloquy. The trial court did not ask Potts if he understood what the trial court was explaining and the times that Potts' responded to the information do not support that Potts did. For example, when the trial court asked Potts to sign the waiver, Potts seems confused as to what the waiver even was. Instead of explaining what the form was, the trial court just repeated that it was a written waiver of counsel. Towards the end of the discussion, Potts also seemed to again express interest in having counsel and, at the conclusion of the discussion, the trial court did not ask Potts if he wanted to represent himself before proceeding to opening statements.

**{¶45}** It is always important to ensure a defendant understands the information presented. However, in situations like this where there is reason to question the defendant's comprehension of the information, it is especially vital to have affirmative evidence demonstrating that the defendant understood the information necessary to make an informed decision concerning self-representation.   It is clear from the record that Potts had unique views about the legal process and did not always respect typical courtroom decorum.  While the trial court maintained a professional demeanor throughout the proceedings, Potts' behavior was undoubtedly frustrating at times. Irrespective of Potts' behavior, the trial court had a responsibility to not only present the necessary information to Potts, but also to ensure that Potts understood the information so that he could make an informed decision as to whether to proceed with counsel.  I am mindful that while Potts was ultimately found competent to stand trial, he initially was not; that fact must also be considered in evaluating the circumstances before us.  Here, while the trial court did present Potts with an abundance of important information, I cannot say that the record demonstrates that Potts understood the information.  Thus, I cannot say that the record evidences that Potts made a voluntary, knowing, and intelligent waiver of counsel when considering the totality of the circumstances. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 39.


APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attoney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.